IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Rodney Allen Stover, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 8:07-2998-RBH-BHH |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Larry Powers, Doug Smith, | ) | |
| and Kimberly Ashley, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment (Dkt. # 40); and the plaintiff's motions to require the defendants to give him his mail (Dkt. # 9), to appoint counsel (Dkt. # 10), to amend his complaint (Dkt. # 14 and 18), to dismiss defendant Smith (Dkt. # 21), and to withdraw motion to dismiss (Dkt. # 36).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed this action on September 6, 2007. On January 23, 2008, the defendants moved for summary judgment. By order filed January 24, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On January 28, 2008, the petitioner filed a response and on February 5, 2008, he filed an amended response opposing the defendants' summary judgment motion.

## FACTS

The plaintiff is an inmate currently housed at the Spartanburg County Detention Facility ("SCDF").[1]  In his complaint, the plaintiff alleges the defendants at the SCDF have conspired against him and given the defendant Detective Doug Smith the plaintiff's incoming and outgoing mail.  (Compl. ¶ 1.)  Specifically, he alleges Smith opened a letter from Sarah Newton, an employee of the North Carolina State Employees Credit Union. (*Id.*)   He alleges Smith obtained Newton's name, address, and phone number from the letter and called her to ask from whom or where the plaintiff was receiving money.  (*Id.*)  He further alleges Smith was legally drunk when he arrested the plaintiff and committed armed robbery during the plaintiff's arrest because he took the plaintiff's wallet through force and placed the wallet into evidence against the plaintiff.  (*Id.*)  The plaintiff alleges Smith did not have a search warrant and did not inventory all of the property contained in his wallet. (Compl. ¶ 1.)

The plaintiff also alleges the SCDF employees have tampered with his mail.  He sets forth a list of the mail he has received while housed at the SCDF, but he alleges that he has not received any mail since May 12, 2007.   (Compl. at 4.)

The plaintiff is seeking one million dollars from each defendant.  (Compl. at 5)   He also wants the United States Attorney's Office to issue warrants against the defendants for "stealing, tampering, and depriving plaintiff his incoming and outgoing mail."  (*Id.*)  Finally, he requests that the Court appoint a postmaster to run the mailroom at the SCDF and issue an order prohibition any retaliation against the plaintiff.  (*Id.*)

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

---

[1]The plaintiff is apparently incarcerated under the last name "Stouver." (Defs.' Mem. Supp. Summ. J. Mot. n. 2.)

> admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION[2]

**Mail Claims**

The plaintiff alleges the defendants have tampered with his mail.  Specifically, he alleges his mail has on various occasions been stolen, opened outside his presence, copied, and given to the defendant Smith without a court order.  The defendants contend that the plaintiff has failed to state a §1983 claim.  The undersigned agrees.

As stated above, the plaintiff alleges the defendants at SCDF have conspired against him and given the defendant Detective Smith his incoming and outgoing mail.  (Compl. ¶ 1.)  Specifically, he alleges Smith opened a letter from Sarah Newton, an employee of the North Carolina State Employees Credit Union.  (Id.)  He alleges Smith obtained Newton's name, address, and phone number from the letter and called her to ask from whom or where the plaintiff was receiving money.  (Id.)

The plaintiff also alleges the SCDF employees have tampered with his mail.  He sets forth a list of the mail he has received since April 11, 2007, but he alleges that he has not received any mail since May 12, 2007.  (Compl. at 4.)  From the various filings the plaintiff has made with the court, it appears the plaintiff is specifically concerned with several letters and bank statements mailed to him on the following dates in 2007: May 15th, May 23rd, June 4th, July 11th.  (Pl.'s Mem. Opp. Summ. J. Mot. at 2; Pl.'s Am. Mem. Opp. Summ. J. Mot. ¶ 5.)  He contends he never received these letters.  Further, he alleges that two other letters from his credit union which were stamped as having been received at the SCDF on September 13, 2007, and September 19, 2007, were opened outside of his presence and copied.  (Dkt. # 14 - Pl.'s 1st Mot. to Amend at 3; Dkt. # 18 - Pl.'s 2nd Mot. to Amend ¶ 1.)

---

[2]In his amended memorandum opposing summary judgment, the plaintiff makes some new allegations regarding his arrest.  He states that he was thrown to the ground and the defendant Smith kicked him with his boots in the head and right shoulder. (Pl.'s Am. Mem. Opp. Summ. J. Mot. ¶ 7.)  He also alleges Smith said there would be no proof because it occurred behind the police car and  would not be recorded by the cruiser's camera. (Id.)   Further, he alleges he was denied a preliminary hearing and has been placed in maximum security "for doing nothing." (Id.¶ 9.)  He also alleges he has been denied fresh air and sunshine. (Id) The undersigned has not considered these additional allegations as they are not in the complaint  nor related to the claims made in the complaint and thus not properly before the court.

He also alleges that a third letter from his credit union dated October 13, 2007, was steamed open.   Finally, he alleges that on October 16, 2007, he was sent an 8 x 10 letter containing all of the mail he had received at his Mills Springs, North Carolina post office box during the preceding seven months. [3] (Dkt. # 14- Pl.'s 1st Mot. to Amend at 1.) He alleges a Corporal Melvin tore the envelop in the middle and, after finding the envelope contained several letters, told the plaintiff pursuant to SCDF policy, he could have only ten letters at a time.   He states the envelop was placed in his personal property bin.   (*Id.* at 2.)

First, the undersigned notes that the mere opening of an inmate's incoming personal mail in his absence does not raise a claim of constitutional magnitude. *Griffin v. Virginia*, 2002 WL 32591574 *3 (2002); *Sterling-Earl v. Gray,* 2006 WL 1318367 at *6-7 (W.D.Va. 2006).   The undersigned notes that different standards apply regarding the inspection of personal versus legal mail.   *Altizer*, 191 F.3d at 548-49.   In *Altizer*, the court noted in a footnote that "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case."   *Id.* at 549, n. 14 (*citing Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)).   In order to be classified as legal mail, the legal sender must be specifically identified and the mail must be marked confidential. If such mail is not so marked, it may be opened outside an inmate's presence. *United States v. Scott*, 925 F.2d 83, 88-90 (4th Cir.1991).

The plaintiff does not allege that any mail that was opened was marked as confidential legal mail; accordingly, he was not entitled to be present while it was opened and inspected. *See United States v. Stotts*, 925 F.2d 83, 88-90 (4th Cir.1991). Furthermore, even assuming that some of the plaintiff's mail which was involved was legal mail, to establish that his rights have been violated by opening incoming legal mail, the plaintiff must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or counsel.   *Griffin v. Virginia*, 2002 WL 32591574 *3 (W.D.Va.2002) (unpublished) (*citing Lewis v. Casey*, 518 U.S. 343 (1996). The plaintiff has

_____

[3]The plaintiff also alleges "that some unknown individual or individuals has broke into plaintiff post office box in Mill Springs, N.C."  (Pl.'s Mem. Opp. Summ. J. Mot. at 2.)

not alleged that the opening of any of his mail has led to any actual harm or interfered with his ability to communicate with counsel or the courts. *Lewis,* 518 U.S. at 351; *see also White*, 886 F.2d at 724 (to state a claim based on delay or non-delivery of legal mail, an inmate must allege that he suffered actual adverse consequences as a result of the delay or that the non-delivery deprived him of meaningful access to the courts). Therefore, the plaintiff has failed to allege or establish any actual harm or prejudice.

Furthermore, as for the plaintiff's claims relating to the SCDF's policy limiting the number of letters an inmate can possess at one time, the undersigned finds it is constitutional. A prison policy that impinges on an inmate's constitutional right is valid "if it is reasonably related to legitimate penological interests." *Altizer v. Deeds*, 191 F.3d 540, 547 (1999)(*citing Turner v. Safley*, 482 U.S. 78, 89 (1987). In *Altizer,* the Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id*. One can easily conceive of legitimate penological interests in ensuring that no contraband or harmful substance comes into the prison through the mail.

In *Turner*, the Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Id.* at 89-90.[4]

---

[4]In *Overton v. Bazzetta*, 539 U.S. 126 (2003), the Supreme Court gave conflicted guidance as to whether a court must consider all the *Turner* factors once the court determines that the challenged regulation bears a rational relation to legitimate penological interests. In discussing a restriction on noncontact visits, the Court stated: "We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests. This suffices to sustain the regulation in question." 539 U.S. at 132. However, then the Court went on to specifically discuss the other *Turner* factors. *Id*. at 135-136.

First, the court must determine whether the regulation is rationally related to a legitimate and neutral governmental objective.  In his affidavit, the defendant Larry Powers, Director of the SCDF, states that SCDF inmates are not allowed to have over ten personal letters in their cells at any time.  (Defs.' Mem. Supp. Summ. J. Mot. Attach 2 - Larry Powers Aff. ¶ 6.)  Powers states that the limit is necessary because of limited storage space and to eliminate potential fire hazards and breeding grounds for vermin and other pests. (*Id*.)  Here, the SCDF's policy limiting inmates to the possession of ten letters at one time is reasonable policy related to a legitimate penological interest.

Turning to the second factor in *Turner* and whether there are alternative avenues remaining open for the plaintiff to exercise his rights, the court notes that the SCDF policy does not deprive the plaintiff of all his mail.  In fact, the regulation does not deprive the plaintiff of any of his mail.  It merely limits the amount he may possess at one time.  Powers states that the plaintiff's mail has been stored in his property bin and he can access his property bin upon written request and can exchange letters as long as he keeps only ten letters at an one time.  (*Id.*)  However, Powers states the plaintiff has never requested any items contained in his property bin.  (*Id*.)[5]

The third factor in *Turner* is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." 482 U.S. at 90.  Powers  states that the limit is necessary because of limited storage space and to eliminate potential fire hazards and breeding grounds for vermin and other pests. (*Id*.)  With this in mind, the undersigned concludes that the impact on prison conditions and safety would not justify eliminating the restriction.  *See Oliver v. Powell,* 250 F.Supp.2d 593 (E.D.Va. 2002).

---

[5]Furthermore, Powers states that the plaintiff's mail has always been received and sent in a timely manner.  (*Id*. at ¶ 7.)  He contends, however, that the plaintiff refuses to abide by the SCDF's ten-letter policy and wants to possess all of his mail at one time. (*Id*.)

Finally, in assessing whether the presence of ready alternatives undermines the reasonableness of the policy, *Turner* does not impose a least restrictive alternative test. The issue is whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal. *Overton*, 539 U.S. at 136. The Supreme Court described this as a "high standard" to meet. *Id.* The plaintiff has not offered any reasonable alternative. Based on the foregoing, the court concludes that the SCDC policy is reasonably related to a legitimate penological goal.

In regard to the plaintiff's allegations that he never received four letters. There is no evidence in the record that the defendants are responsible for the nondelivery of these letters. The plaintiff's conclusory allegations will not support a claim that the defendants deliberately refused to deliver this mail. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987) ("even though pro se litigants are held to less stringent pleading standards than attorneys, the Court is not required to 'accept as true legal conclusions or unwarranted factual inferences' "). In any event, occasional non-delivery of incoming mail also does not state a constitutional claim. *See Pearson v. Simms*, 345 F.Supp.2d 515, 519 (D.Md.2003) (aff'd , 88 Fed. Appx. 639 (4th Cir.2004)) (holding that "occasional incidents of delay or non-delivery of mail" are not actionable under § 1983). Accordingly, based on the foregoing, the plaintiff has failed to state a claim regarding his mail and the defendants should be granted summary judgment on these claims.

**Claims against Defendant Smith**

The plaintiff alleges Smith was legally drunk when he arrested the plaintiff and committed armed robbery during the plaintiff's arrest because he took the plaintiff's wallet through force and placed the wallet into evidence against the plaintiff. (Id.) The plaintiff alleges Smith did not have a search warrant and did not inventory all of the property contained in his wallet. (Compl. ¶ 1.)

Other than the plaintiff's own conclusory statements, these allegations are not supported by any evidence. The defendant Smith states in his affidavit that he participated

very minimally in the plaintiff's arrest. (Defs.' Mem. Supp. Summ. J. Mot. Attach 6 -  Doug Smith's Aff. ¶ 3.)   He states that around midnight on March 10, 2007, he received a call that officers had arrested the plaintiff on charges of burglary and petit larceny.  (*Id.*)  Smith states that by the time the defendant Smith arrived, the plaintiff was already handcuffed and sitting in a police car and the plaintiff declined to talk to him. (*Id.*)

The defendant Smith states he drove to the SCDF and obtained warrants from a magistrate. (*Id.* at ¶ 4.)   Smith states that he never touched the plaintiff, did not personally arrest him, and never looked into the duffle bag of property that was on him at the time of his arrest. (*Id*. at ¶ 5 ). The defendants state that the plaintiff's wallet with his bank card  is stored in the evidence room of the Spartanburg County Sheriff's Department.  (*Id*. at ¶ 7.)  On December 7, 2007, the defendant Smith states that he and his counsel, A. Todd Darwin located the plaintiff's wallet in a sealed evidence bag in the property room at the Sheriff's Department.  (*Id.*)

Furthermore, to the extent that plaintiff seeks to have criminal charges brought against defendant Smith, his claims are denied because the court is without jurisdiction to grant this sort of relief to the plaintiff.  *See Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990).  Finally, the undersigned notes that the plaintiff alleges the defendants are retaliating against him for filing this action.  Retaliation against an inmate for the exercise of his right to access to the courts states a § 1983 claim.  *Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir.1978); *Russell v. Oliver*, 552 F.2d 115 (4th Cir. 1977).  However, the inmate must allege sufficient facts to indicate that the alleged retaliation of which he complains resulted in some adversity to him sufficient to warrant concern about a chilling effect on the exercise of his right to access the courts.  *American Civ. Liberties Union v. Wicomico County*, 999 F.2d 780 (4th Cir. 1993).  Moreover, the inmate must point to specific facts which tend to support his allegation of retaliation. *White v. White*, 886 F.2d 721 (4th Cir. 1989). Here, the plaintiff has not alleged sufficient facts that the defendants' have retaliated against him or that their actions chilled his right to access the courts in any way.  Accordingly, this claim is also without merit.

**Qualified Immunity**

The defendants also raise the defense of qualified immunity, which requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992). However, because there is no evidence that any specific right of the plaintiff was violated, it is unnecessary for this Court to address the qualified immunity defense. *See Porterfield v. Lott,* 156 F.3d 563, 567(4th Cir.1998) (when the court determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist.").

**Motions to Amend**

The plaintiff has filed two motions to amend his complaint.  The undersigned recommends these motions be denied.

Federal Rules of Civil Procedure 15(a) provides that: "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Nevertheless, leave to amend may be denied on the ground of futility "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

In his original complaint, the plaintiff raised claims that the defendants were tampering with his mail.  On October 31, 2007, he filed a motion seeking to amend his complaint and allege new claims for relief.  (Dkt. Entry # 14.)  In this motion, he challenges the SCDF policy limiting the possession of inmates to ten pieces of mail.  Further, he alleges a Corporal Melvin, who is not a defendant, opened an envelope containing his bank statements by tearing it down the middle.  He then alleges Melvin told him the letter was contraband and placed the letter in his personal property bin.  He further alleges another

certified letter dated September 13, 2007, was opened outside of his presence and the contents were copied.   The plaintiff also alleges the defendants are retaliating against him for his filing of this action.   These claims have been discussed above and the undersigned has concluded that the plaintiff has failed to state any claims based on these allegations. Accordingly, the plaintiff's first motion to amend should be denied.

On November 14, 2007, the plaintiff filed a second motion to amend seeking to add new claims against a new defendant, Sheriff Chuck Wright.   He alleges Wright has committed gross negligence by letting investigators and detectives intercept his mail without a search warrant or court order.  (Mot. to Amend Compl. at 3-4.)  He also alleges Wright committed gross negligence when he gave one of his detectives permission to take the plaintiff's debit card.  (*Id.* at 4.)  The plaintiff alleges his debit card has been used while he has been incarcerated and money stolen from his checking account.  (*Id.*)

As to the plaintiff's claims against Sheriff Wright, the plaintiff has failed to make any showing of supervisory liability.  "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted).   The plaintiff must demonstrate that the prisoner faces a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Id.  See also  Moore v. Winebrenner,* 927 F.2d 1312 (4th Cir.1991); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

As the proposed amended claims would be futile, the undersigned recommends that the plaintiff's motions to amend his complaint be denied.  *See Sciolino v. Newport News, Va.*, 480 F.3d 642, 651 (4th Cir. 2007) (holding denial of leave to amend complaint appropriate where proposed claim is futile).

11

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 40) be GRANTED and the plaintiff's motions to amend his complaint. (Dkt. # 14 and 18) be DENIED.

If the District Court adopts this report, it is FURTHER RECOMMENDED that the Plaintiff's Motions to Give Him his Mail (Dkt. #9), to Appoint Counsel (Dkt. #10), to Dismiss Defendant Smith (Dkt. #21), and to Withdraw Motion to Dismiss (Dkt. #36) be DENIED as moot.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

May 20,  2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).